RTR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2010 NOV 30 A 9:17
JON A. SANFILIPPO
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

v.   Case No. 10-CR-39

ALLEN D. BANKS,

Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Gordon P. Giampietro, Assistant United States Attorney, and the defendant, Allen D. Banks, individually and by attorney Laurence M. Moon, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in four counts of a four-count indictment which alleges violations of Title 18, United States Code, Sections 157(3), 152(8), 1519, 152(5), and 2. The defendant has also been charged in two counts of a two-count information that alleges violations of Title 18, United States Code, Sections 152(8), 1014, and 2.

3. The defendant has read and fully understands the charges contained in the indictment and information and fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to counts one and two of the information set forth in full as follows:

### *COUNT ONE*

*THE UNITED STATES ATTORNEY CHARGES:*

*On or about March 31, 2005, in the State and Eastern District of Wisconsin,*

*ALLEN D. BANKS,*

*in a case pending under title 11 of the United States Bankruptcy Code, knowingly and fraudulently falsified and made a false entry relating to the financial affairs of the debtors in Bankruptcy Case No. 03-26175-SVK, to wit, that the debtors' residence was encumbered by a $30,000 mortgage in favor of S.F.*

*All in violation of Title 18, United States Code, Sections 152(8) and 2.*

### *COUNT TWO*

*THE UNITED STATES ATTORNEY FURTHER CHARGES:*

*On or about May 16, 2006, in the State and Eastern District of Wisconsin,*

*ALLEN D. BANKS,*

*for the purpose of influencing A.B., an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, knowingly made a false statement in connection with a loan application, to wit, that his gross monthly income was $15,260.00 when, in truth and in fact, and as the defendant well knew, his gross monthly income was $2,441.00.*

*All in violation of Title 18, United States Code, Sections 1014 and 2.*

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses charged in counts one and two of the information, as described above. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

### *Count One*

At all times relevant to count one, A.T. and B.T. were debtors in a Chapter 13 bankruptcy, Case No. 03-CV-26175-SVK. Pursuant to the Order Confirming Plan, dated July 8, 2003, A.T. and B.T. ("debtors") were required to obtain the written consent and approval of the bankruptcy trustee before becoming liable for money borrowed, and before selling or otherwise disposing of property of the bankruptcy estate. During the pendency of the bankruptcy, the debtors were unable to maintain ongoing mortgage payments on the their residence. On or about December 15, 2004, the mortgagee obtained a lift of the automatic

stay and, soon thereafter, commenced a foreclosure action in Milwaukee County Circuit Court.

Sometime in early 2005, Christopher A. Johns ("Johns") of Prosperity Mortgage, LLC, knowing that the debtors were facing foreclosure, offered to help them by brokering the sale of their home to the defendant. On or about February 15, 2005, the defendant executed an offer to purchase the residence for $120,000. Johns drafted the offer to purchase and negotiated the $120,000 purchase price. In addition, the settlement statement, drafted by J.S. of Closing Services of Wisconsin, Inc. ("Closing Services"), reflected the payoff of a second mortgage allegedly given by the debtors to S.F. to secure a $30,000 debt they allegedly owed to S.F. Johns drafted the mortgage document that purports to secure the alleged indebtedness. In truth and in fact, the debtors had never met S.F. and were not indebted to her for any amount of money. The purpose of the fake mortgage was to allow the defendant – unbeknownst to the lender and the debtors – to receive all of the debtors' equity in the property at the time of closing.

On or about the intended date of closing, March 31, 2005, Johns and the defendant learned that the debtors were in Chapter 13 bankruptcy, and would need to obtain the approval of the trustee for the sale. On or about March 31, 2005, Johns faxed to the trustee, among other things, the settlement statement reflecting the fake mortgage, as well as the mortgage itself, which was an attachment to the title commitment. As reflected on the facsimile cover sheet, Johns requested trustee approval of the sale and the pay-off amount

for the Chapter 13 creditors. On April 1, 2005, the trustee, through a staff attorney, refused to give permission to sell.

On April 4, 2005, the trustee wrote to Johns advising that the pay-off amount for the creditors was $13,709.37. Johns directed Closing Services to prepare a revised settlement statement that reflected a payout to the trustee of that amount, and also a payout of $13,723.75 to S.F. Also on April 4, 2005, S.F. signed a pay-off letter in which she agreed to accept the $13,723.75 in satisfaction of the alleged debt owed to her by the debtors. On April 5, 2005, S.F. cashed Check No. \*\*\*660 that she received from the closing and gave the funds to the defendant. On April 6, 2005, the defendant deposited $12,000 of the funds into his AB Credit Union account.

On or about August 12, 2005, the debtors commenced suit in Milwaukee County Circuit Court against, among others, Johns, S.F. and Closing Services. The suit alleged that the defendant Johns induced the debtors to sign the fraudulent mortgage in favor of S.F., thereby causing the theft of $13,723.75 of the debtors' equity. On or about September 30, 2005, Johns and Closing Services paid $20,000 to settle the debtors' lawsuit. Johns, on behalf of Prosperity Mortgage, LLC, contributed $15,000 towards the settlement (Check No. \*\*228).

*Count Two*

On or about May 16, 2006, the defendant applied for an equity express line of credit with A.B., a financial institution whose accounts were at all relevant times insured by the

Federal Deposit Insurance Corporation. The defendant, or someone on his behalf and with his knowledge, submitted an application to A.B. seeking approval for a loan in the amount of $218,000.00. With respect to qualifying income, the defendant answered that his gross monthly income from wages was $15,260.00, and that he received an additional net monthly rental income of $3,250.00, for a total monthly income of $18,510.00. In truth and in fact, and as the defendant knew, his gross monthly income was $2,441.00.

The defendant signed the application below the following admonition: "The undersigned understand that it may be a federal crime punishable by fine or imprisonment or both for knowingly making any false statements concerning any of the above facts, under the provisions of Title 18, United States Code, part 1, chap.47 Section 1014."

The loan (No. ************9200416) was approved in the amount of $230,000 and the defendant drew on the entire amount. The defendant subsequently defaulted. On or about October 14, 2009, A.B. obtained a judgment against the defendant in the amount of $281,389.85.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in these offenses.

## PENALTIES

7. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum penalties.

Count One: 5 years of incarceration; a $250,000 fine; a mandatory special assessment of $100; and a maximum of three years of supervised release.

Count Two: 30 years of incarceration; a $1,000,000 fine; a mandatory special assessment of $100; and a maximum of five years of supervised release.

The parties further recognize that a restitution order may be entered by the court.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF INDICTMENT

9. As the defendant, the government agrees to move to dismiss all four counts of the indictment at the time of sentencing.

## ELEMENTS

10. Count One: The parties understand and agree that in order to sustain the charge of *falsifying a document relating to the financial affairs of a debtor in bankruptcy* in violation of 18 U.S.C. § 152(8), the government must prove each of the following propositions beyond a reasonable doubt:

First, a proceeding under title 11 of the bankruptcy code existed;
Second, the defendant knowingly and fraudulently falsified and made a false entry on a document;
Third, that related to the financial affairs of a debtor in bankruptcy.

Count Two: The parties understand and agree that in order to sustain the charge of *making a false statement on a loan application* in violation of 18 U.S.C. § 1014, the government must prove each of the following propositions beyond a reasonable doubt:

7

First, the defendant knowingly made a false statement;
Second, for the purpose of influencing in any way the actions of a financial institution; and
Third, the accounts of the financial institution are insured by the Federal Deposit Insurance Corporation.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth above. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not

move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty.

### Base Offense Level - Count One

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2).

### Specific Offense Characteristics - Count One

18. The parties agree to recommend to the sentencing court that a 4-level increase for loss amount under Sentencing Guidelines Manual §2B1.1(b)(1)(C) is applicable to the offense level for the offense charged in Count One.

19. The parties agree to recommend to the sentencing court that a 2-level increase for a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding under Sentencing Guidelines Manual §2B1.1(b)(8)(B) is applicable to the offense level for the offense charged in Count One.

20. The government will recommend to the sentencing court that a 2-level vulnerable victim adjustment under Sentencing Guidelines Manual § 3A1.1(b)(1) is applicable to the offense level charged in Count One. The defendant will not join in this recommendation.

### Base Offense Level - Count Two

21. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Two is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1).

## Specific Offense Characteristics - Count Two

22. The parties agree to recommend to the sentencing court that a 12-level increase for loss amount under Sentencing Guidelines Manual §2B1.1(b)(1)(G) is applicable to the offense level for the offense charged in Count Two.

## Acceptance of Responsibility

23. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

24. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offenses as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

25. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

26. The government agrees to recommend a sentence at the bottom of the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

27. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

28. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

29. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

30. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

### Fine

31. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

32. The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

33. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a

downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

### Restitution

34. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant pay restitution in connection with count two in the total amount of $271,857.87 ($229,890.40 (principal) + $41,967.47 (interest)).[1] The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### DEFENDANT'S WAIVER OF RIGHTS

35. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury.

---

[1] Restitution is not necessary in connection with count one because the victim-debtors were made whole in the civil lawsuit.

The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

36. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may

15

question the defendant under oath, on the record, and in the presence of counsel about the offenses to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

37. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

38. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## GENERAL MATTERS

39. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

40. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

41. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

42. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offenses on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

43. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant

understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

44. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 11-26-10

ALLEN D. BANKS
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 11/26/10

LAURENCE M. MOON
Attorney for Defendant

For the United States of America:

Date: 11/29/10

JAMES L. SANTELLE
United States Attorney

Date: 11/29/10

GORDON P. GIAMPIETRO
Assistant United States Attorney

19